# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

**In Re**

MARK EDWIN MARRIOTT,

              **Debtor.**

**Bankruptcy Case
No. 09-41210-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    M. Patrick Duffin, Idaho Falls, Idaho, Attorney for Debtor.

    Aaron J. Tolson, WRIGHT JOHNSON TOLSON & WAYMENT, Idaho Falls, Idaho, Attorney for Diane Ulmen.

    Daniel C. Green, RACINE OLSON NYE BUDGE & BAILEY, Pocatello, Idaho, Attorney for Trustee.

    R. Sam Hopkins, Pocatello, Idaho, Trustee.

MEMORANDUM OF DECISION - 1

### *Introduction*

This decision concerns whether proceeds from the sale of a

homestead are exempt.  Chapter 7[1] trustee R. Sam Hopkins ("Trustee")

filed an Objection to [Debtor's] Claim of Exemption.  Docket No. 20.

Debtor Mark Edwin Marriott responded.  Docket No. 26.  The Court

conducted a hearing on the objection on February 9, 2010, and accepted

post-hearing supplemental briefing.  Having considered the evidence and

the arguments of the parties, as well as the applicable law, this

Memorandum constitutes the Court's findings, conclusions, and reasons

for disposition of the issues.  Fed. R. Bankr. P. 7052; 9014.

### *Findings of Fact*

The material facts in this case are uncontested.  Debtor and the

former Dianne Marriott, now Dianne Marie Ulmen ("Ulmen"), were

married in 1986.  Docket Nos. 24-1 and 24-2.  Three children were born to

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

the marriage; two of them are minors.  In 2008, Ulmen filed an action to obtain a divorce from Debtor.

On or about January 17, 2009, Debtor and Ulmen sold their marital homestead.  From the sale proceeds, the mortgage debt and other expenses were paid, leaving $26,154.70 ("Sale Proceeds").  Docket No. 24-3.  The Sale Proceeds were deposited in Debtor's attorney's trust account pending a resolution of their status.

On May 7, 2009, the state court entered a Partial Decree of Divorce ("Partial Decree").  The Partial Decree granted the parties a divorce, and granted joint legal custody of the minor children to Debtor and Ulmen, with the primary physical custody of the children given to Ulmen.  Docket No. 24-1.  Debtor was ordered to pay interim support of $1,100 per month, with $600 payable on the first of the month, and $500 due on the fifteenth.  Docket No. 24-2.  The state court ordered that the Sale Proceeds remain in Debtor's counsel's trust account.[2]  Docket No. 24-2, ¶ 11.

---

[2] Oddly, the Partial Decree references the "pending sale" of the home as an event seemingly yet to take place, although the Partial Decree is date-stamped

MEMORANDUM OF DECISION - 3

On August 13, 2009, Debtor filed a chapter 7 bankruptcy petition,

and listed his obligation to make the $1,100 monthly temporary support

payments as an unsecured priority claim on schedule E.   Debtor claimed

the Sale Proceeds exempt on schedule C under both Idaho Code §§ 55-1003

and 11-604(1)(b).

On September 3, 2009, the state court held a trial, after which it

announced its oral ruling.  To formalize the state court's decision, a

Supplemental Divorce Decree ("Supplemental Decree") was entered on

October 29, 2009.  Docket Nos. 24-3 – 24-5.  The state court, understanding

that because of Debtor's bankruptcy filing the § 362(a) automatic stay was

in effect, did not purport to allocate the parties' responsibility for paying

debts nor divide their marital property.  Instead, the Supplemental Decree

provides the following:

--------

nearly 4 months after the sale closed.  The date line above the judge's signature
reads "Dated, this ____ day of January 2009."  Docket No. 24-2.  Apparently,
several months passed between the drafting of the Partial Decree and its entry.
The Court is unaware of any explanation for the delay.

MEMORANDUM OF DECISION - 4

D.   At the time of trial, the parties agreed to a division of the [Sale Proceeds] in the Duffin Law Office, Chtd. Trust Account.  The parties agreed [Ulmen] would receive $21,000.00 and [Debtor] would receive the remaining $5,154.70.

E.   The Court is informed that the parties agreed after trial that [Ulmen] would receive all [Sale Proceeds] in the Duffin Law Office, Chtd. Trust Account.  In exchange, [Debtor's] child support would be deemed current as of October 31, 2009. In addition, by agreement, he would not owe any money to [Ulmen] as of October 31, 2009.

F.   It appears to the Court that the parties have changed their respective positions based on the agreements outlined in paragraphs D and E. [Debtor] has not paid child support to [Ulmen] for September or October.

G.   At the time of trial, part of the parties' [sic] was:

1.   [Debtor] would claim a full exemption in and to the [Sale Proceeds], in his Bankruptcy schedules.

2.   [Debtor] and Counsel would cooperate with Jay A. Kohler, [Ulmen's] Bankruptcy Counsel, in good faith to protect [Ulmen's] interest in the Bankruptcy Court.

MEMORANDUM OF DECISION - 5

> > a.      This agreement to cooperate
> >          was limited to any action that
> >          would not be contrary to
> >          [Debtor's] interest, and would
> >          not be in violation of the
> >          United States Bankruptcy
> >          Laws, Rules, or practices.

Docket No. 24-3.

In addition, the decree ordered Debtor to pay child support in the amount of $898 per month, subject to reduction to $584 per month in February, 2010, when the parties' oldest minor child was due to graduate from high school.  Docket No. 24-4.  The remaining child support obligation would continue until the youngest child turned eighteen and graduated from high school, or turned nineteen years old, whichever first occurred.  *Id*.

Finally, the Supplemental Decree provides:

> The Court is concerned that [Debtor] has filed for
> Bankruptcy protection.  The Court is concerned
> about how [Ulmen] will be treated in the
> Bankruptcy Court.  The Court awards [Ulmen]
> $10.00 per month as and for spousal maintenance
> to ensure she is not harmed in the United States

MEMORANDUM OF DECISION - 6

> Bankruptcy Court proceeding.  If [Ulmen] is
> required to pay debts from [Debtor's]
> Bankruptcy, then she will be able to return to this
> Court and seek a Modification of the order for
> spousal maintenance so that can be adjusted
> accordingly.  If she is required to pay debts, the
> Court will offset the debts with an increase in
> spousal support.

Docket No. 24-5.[3]

As noted above, Debtor originally claimed the Sale Proceeds exempt

under both Idaho Code §§ 55-1003 and 11-604(1)(b).  Docket No. 1.

However, on October 6, 2009, Debtor amended his schedules to claim the

Sale Proceeds exempt solely under Idaho Code § 11-604(1)(b).  Docket No.

16.  On November 2, 2009, Trustee objected to Debtor's claim of

exemption, Docket No. 20, which objection came on for hearing on

---

[3]  On November 24, 2009, Ulmen filed a motion for relief from the
automatic stay to facilitate her return to state court to obtain entry of a final
decree of divorce consistent with the provisions of the Supplemental Decree,
including a division of the parties' community property and debts.  Docket No.
24.  Trustee objected to the motion, Docket No. 29, and a hearing was held.
Docket No. 31.  Ulmen's stay relief motion was granted, but the Court's order
specified that any order entered by the state court would not be binding on
Trustee.  *Id.*  Furthermore, Trustee's consent was required before the Sale
Proceeds could be disbursed.  *Id.*

MEMORANDUM OF DECISION - 7

February 9, 2010.  At the hearing, Debtor's counsel acknowledged that an exemption under Idaho Code § 55-1008 was likely a better fit than a claim under Idaho Code § 11-604(1)(b), and asked the Court to consider such an exemption claim.  Trustee did not object to this informal request to amend the exemption claim.

After supplemental briefing, the issues were deemed under advisement on March 26, 2010.[4]

### Conclusions of Law

Upon the filing his petition, a bankruptcy estate was created, comprised of all of Debtor's legal and equitable interests in property as of the commencement of the case.  *See* 11 U.S.C. § 541(a)(1).  However, Debtor could protect certain types of exempt property from Trustee's reach.  *See* 11 U.S.C. § 522(b)(1).  Debtors in this State may access only those

---

[4]  Ulmen's counsel, not Debtor's,  appeared and argued in favor of Debtor's exemption claim at the February 9, 2010 hearing.  Ulmen's counsel also filed the subsequent supplemental briefing in support of the exemption claim. Docket Nos. 39, 43.  Regardless of whatever interest Ulmen believes she has in the Sale Proceeds, however, the issue before the Court here concerns the validity of Debtor's claim of exemption in those funds – in other words, any right to an exemption belongs to Debtor, not Ulmen.

MEMORANDUM OF DECISION - 8

exemptions provided under state law, since Idaho has "opted out" of the federal exemption scheme. *See* 11 U.S.C. § 522(b)(3); Idaho Code § 11-609.

Debtor's exemption rights are fixed as of the petition date. *In re Almgren*, 08.1 I.B.C.R. 3, 3 (Bankr. D. Idaho 2008). Because Trustee is the objecting party, he has the burden of proving an exemption is not properly claimed. Fed. R. Bankr. P. 4003(c); *In re Wiley*, 352 B.R. 716, 718 (Bankr. D. Idaho 2006). While the Court must liberally construe Idaho's exemption statutes in Debtor's favor, the statutory language may not be "tortured" in the guise of liberal construction. *In re Collins*, 97.3 I.B.C.R. 78, 79 (Bankr. D. Idaho 1997).

At various times during the course of this bankruptcy case, Debtor has claimed the Sale Proceeds as exempt under Idaho Code § 11-604(1)(b), as well as under the homestead statute, Idaho Code § 55-1003.[5] Without

---

[5] Initially, Debtor claimed the funds exempt under Idaho Code § 55-1003. However, that is the statute which provides the $100,000 cap on homestead exemptions, and is not specifically applicable to proceeds from the sale of a homestead. During the hearing, Debtor conceded that Idaho Code § 55-1008 was the correct statute to utilize when seeking to exempt proceeds, as he attempts to do here. Because the Debtor essentially made an oral motion to amend his schedules in accordance with the arguments made at the hearing, the Court will

MEMORANDUM OF DECISION - 9

objection from Trustee to this approach, the Court will consider Debtor's

exemption claims under both Idaho Code §§ 11-604(1)(b) and 55-1008.

     A.    <u>Are the Sale Proceeds Exempt As Support</u>?

Debtor contends first that the Sale Proceeds are exempt as funds

necessary to pay support payments to his ex-spouse.  The applicable

statute provides:

> An individual is entitled to exemption of the
> following property to the extent reasonably
> necessary for the support of him and his
> dependents:
> . . . .
>     (b) money or personal property received,
> and rights to receive money or personal property
> for alimony, support, or separate maintenance[.]

Idaho Code § 11-604(1)(b).  There are several difficulties with Debtor's

exemption claim under this statute.

First, the statute provides an exemption of support monies to the

extent necessary "for the support of [the debtor] and his dependents".

---

consider his claim of exemption under Idaho Code § 55-1008.

MEMORANDUM OF DECISION - 10

Thus, on its face, the exemption statute does not allow exemption of moneys paid out by a debtor to benefit another.

Second, the statute only exempts "money or personal property *received . . . for* alimony, support, or separate maintenance."  Idaho Code § 11-604(1)(b) (emphasis supplied).  The funds in this case were received by Debtor from the sale of the marital homestead; they were not received as support payments made to Debtor.

The justification for the exemption provided under the Idaho statute should be obvious.  When a family law court orders support payments to be made to a spouse or former spouse for alimony or support, that court has determined those payments are necessary, from a family law standpoint, based upon the relative incomes and resources of the parties. If support monies received by a debtor were not exempt, and could be reached by his or her creditors, the debtor and his or her dependents, who presumably rely upon those funds for their support, would be deprived. This result hardly makes sense.  Thus, the Idaho legislature deemed those monies, when paid to the debtor, exempt from the reach of the debtor's

MEMORANDUM OF DECISION - 11

creditors.  Even so, to prevent unfairness to creditors, the exemption is limited to those amounts reasonably necessary for the support of the debtor-recipient and his or her dependents.  Any amounts in excess of those which are reasonably necessary for the debtor's support are not exempt, and are accessible by creditors.

Debtor contends that this Court's decision in *In re Russell*, 163 B.R. 584 (Bankr. D. Idaho 1994), supports his position that the Sale Proceeds are exempt under Idaho Code § 11-604(1)(b).  The Court disagrees.  *In re Russell* involved a debtor who was owed back child support.  She and her ex-husband agreed that he would deed her a parcel of real property in full settlement of the support arrearage.  The debtor filed a bankruptcy petition a few months later and claimed the real property exempt under Idaho Code § 11-604(1)(b).  The trustee objected, contending that the language of the statute excluded real property from the exemption.

The Court held that the real property was not exempt because it was received for payment of past due support, while Idaho Code § 11-604(1)(b) exempts only money and property reasonably necessary to meet the

MEMORANDUM OF DECISION - 12

present and anticipated needs of the individual and his dependents. *In re Russell*, 163 B.R. at 585. However, in its decision, the Court stated in dicta that "[w]here the underlying right is a right to payment of money, real property transferred in satisfaction of future child support obligations would be exempt where the property was to be sold and the proceeds used to pay the children's obligations." *Id.* at 586.

The scenario envisioned by the dicta in *In re Russell* is certainly a different one than the situation presented here. In this case, Debtor did not receive a parcel of real property in order to meet his present and anticipated support needs, nor did he receive the Sale Proceeds to meet his own support needs. Rather, the parties' marital homestead was sold, and it appears that Debtor seeks to use those proceeds to pay, at least in part, past due child and spousal support. These facts render *In re Russell* distinguishable and take the Sale Proceeds outside the scope of Idaho Code § 11-604(1)(b).

There is a further reason to not allow Debtor to use the Sale Proceeds to pay support payments to Ulmen. To do so would essentially

MEMORANDUM OF DECISION - 13

allow Debtor to use an asset of his bankruptcy estate to prefer a particular

creditor at the expense of other creditors.  While it is true that Ulmen has a

priority claim in Debtor's bankruptcy, *see* 11 U.S.C. §§ 507(a)(1) and 726,

the distribution of assets must be made by Trustee according to the Code.

Indeed, the orderly distribution of a debtor's assets is one of the very

cornerstones of the bankruptcy process and one which protects both

debtors and creditors.  Were it not for this process, creditors could loot a

debtor's assets, and debtors could prefer one creditor over another.  To

preserve the integrity of the distribution scheme, the Court declines to

allow Debtor to exempt the Sale Proceeds and pay them to Ulmen as

support simply because Ulmen may hold a priority claim.

> B. <u>Are the Sale Proceeds Exempt as a Homestead</u>?

On January 17, 2009, the marital homestead was sold.  The Sale

Proceeds resulted from that transaction.  Thus, on August 13, 2009, when

Debtor filed his bankruptcy petition, Debtor no longer owned a

homestead, but rather held an interest in the cash proceeds from the sale of

MEMORANDUM OF DECISION - 14

a homestead.  As such, Debtor was limited to the exemption in Idaho Code

§ 55-1008, which provides, in relevant part:

> The proceeds of the voluntary sale of the
> homestead in good faith for the purpose of
> acquiring a new homestead . . . , up to the amount
> specified in section 55-1003, Idaho Code, shall
> likewise be exempt for one (1) year from receipt,
> and also such new homestead acquired with such
> proceeds.

Idaho Code § 55-1008(1).

The Court has interpreted Idaho Code § 55-1008 on prior occasions.

As explained in those decisions, it is clear that Debtor "must reinvest the

sale proceeds in another exempt homestead within one year or the

exemption provided by the statute will lapse." *In re Cerchione*, 09.1 I.B.C.R.

5, 6 (Bankr. D. Idaho 2009) (citing *England v. Golden (In re Golden)*, 789 F.2d

698, 701 (9th Cir. 1986) (*aff'd* 414 B.R. 540 (9th Cir. BAP 2009)); *see also, Ford

v. Konnoff (In re Konnoff)*, 356 B.R. 201, 208 (9th Cir. BAP 2006); *Gaughan v.

Smith (In re Smith)*, 342 B.R. 801, 808 (9th Cir. BAP 2006); *In re Younger*, 373

B.R. 111, 116 n. 6 (Bankr. D. Idaho 2007)).  "[T]o retain their exempt status,

a debtor 'must evidence an intent to use the proceeds to acquire a

MEMORANDUM OF DECISION - 15

replacement homestead, or at least keep the funds identified and

segregated in order that such a possibility has not been foreclosed.'" *In re*

*Cerchione*, 09.1 I.B.C.R. at 6, n. 6 (citing *In re Kierig*, 00.2 I.B.C.R. 64, 65

(Bankr. D. Idaho 2000)).

In this case, on the date Debtor filed for bankruptcy, the Sale

Proceeds qualified as exempt under Idaho Code § 55-1008.  The funds in

question were generated by the sale of Debtor's  homestead, and they have

been segregated in his attorney's trust account since the sale.  However,

more than one year has elapsed since the homestead was sold.  The Court

must therefore resolve whether, as Trustee contends, Debtor's exemption

in the funds has expired.  Debtor insists the funds remain exempt because

the statutory exemption period has been tolled.

1. <u>Equitable Tolling and Idaho Code § 55-1008</u>.

Idaho's homestead exemption statute does not expressly provide for

tolling of the one-year reinvestment period, and thus this Court must

consider whether equity dictates that the time limit be tolled.  There are no

Idaho cases which have addressed this question.

MEMORANDUM OF DECISION - 16

Like many other states, in Idaho, the legislature deemed it appropriate to exempt proceeds from the sale of a homestead for a specified period of time to allow a debtor to reinvest the money in another homestead. After one year, however, the statute allows creditors to reach the proceeds if the debtor has not used them to buy another homestead. This approach represents a balancing of the interests of debtors and creditors. But implicit in this statutory scheme is the notion that the debtor have a meaningful opportunity to utilize the proceeds in the manner envisioned by the Idaho legislature. If, instead, the debtor is legally unable to access the homestead sale proceeds during the one year reinvestment period, the scales are tilted in favor of creditors.

Idaho's exemption laws are to be liberally construed in favor of a debtor to achieve their purpose. Unless a debtor receives relief from the reinvestment requirement while he or she is denied access to the funds, the exemption right is frustrated. For these reasons, the Court concludes that, depending upon the facts and circumstances of each case, equitable tolling may be applied to the reinvestment period of Idaho Code § 55-1008.

MEMORANDUM OF DECISION - 17

In its research, the Court has located cases in which other courts have equitably tolled the period during which homestead sale proceeds are exempt and may be reinvested.  The circumstances in which tolling was applied in these cases is instructive.  For example, in *In re Bading*, 376 B.R. 143 (Bankr. W.D. Tex. 2007), a debtor's homestead consisted of two contiguous parcels.  A creditor refused to release an improper lien on one parcel, which ultimately compelled the debtor to sell her homestead in consecutive transactions to the same buyer.  The debtor sold the first parcel, and when she was eventually able to obtain the release of the improper lien, she sold the second parcel.  Had the proceeds reinvestment clock not been tolled as to the proceeds from the sale of the first parcel, the debtor would have lost her exemption while she was attempting to sell the second.  The *Bading* bankruptcy court held that the time under state law within which the debtor was required to reinvest the proceeds of the first sale transaction was tolled until the sale of both parcels could be completed.  *In re Bading*, 376 B.R. at 153-54.  Specifically, the court held that refusing to toll the running of the reinvestment clock would have

MEMORANDUM OF DECISION - 18

"deprived [debtor] of the opportunity to enjoy the full benefits of the homestead guaranteed to her under the Texas Constitution." *Id*. at 153.

In a case under the Bankruptcy Act, another court has held that when a debtor filed for bankruptcy, constructive possession of the sale proceeds was given to the trustee until the trustee filed his report of exemptions. *In re Widdershoven*, 452 F.Supp. 503, 505 (N.D. Cal. 1978). Because during this time the debtor was unable to access and control the sale proceeds, the time for reinvestment of those proceeds in a new homestead was tolled from the filing of the bankruptcy petition until the trustee filed his exemption report. *Id.; see also In re Golden*, 789 F.2d at 701; *In re White*, 727 F.2d 884, 887-88 (9th Cir. 1984); *In re Ehmke*, 4 B.R. 331, 336 (Bankr. S.D.Cal. 1980).

As noted above, under § 541(a), all of a debtor's property becomes property of the bankruptcy estate when a petition is filed. Under § 522(l) and Rule 4003, it is debtor's responsibility to file a claim of exemptions in the schedules. Property claimed as exempt by a debtor is not deemed exempt until either the time for filing objections to the debtor's claim of

MEMORANDUM OF DECISION - 19

exemption expires under Rule 4003(b), or if an objection is filed, until the bankruptcy court allows the challenged exemption.[6]  Thus, although the statutory framework existing when *In re Widdershoven* was decided was altered somewhat by the current Code and Rules, the rationale of that decision endorsing equitable tolling remains sound.

The Court emphasizes that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."  *Wallace v. Kato*, 549 U.S. 384, 396 (2007).  It should be applied "sparingly."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  As such, equitable tolling will apply to the reinvestment period of Idaho Code § 55-1008 only in extraordinary circumstances, where the debtor had no access to or control over the funds.

<u>2.  Application of Equitable Tolling to this Case.</u>

---

[6]  The *In re Golden* court appears to be under the impression that with statutory changes occasioned by adoption of the Code, and the addition of Rule 4003, debtors have control over their exempt property as soon as they claim exemptions.  Of course, this is not correct.  The trustee and other parties may object to the claim of exemption, and in some cases, and as is often true with homesteads, only a portion of the debtor's equity in asset may be exempt.

MEMORANDUM OF DECISION - 20

In this case, for a couple of reasons, Debtor has never had unrestricted access to or control over the Sale Proceeds. The Partial Decree was drafted prior to the sale of the homestead, and although it was not entered of record until somewhat later, the parties and their attorneys nevertheless abided by its terms. Both Trustee and Debtor agree that the Sale Proceeds were immediately deposited into Debtor's counsel's trust account, and have not been released since. When the Partial Decree was entered by the state court judge, Debtor's counsel and the parties were restrained by the state court's order to retain the Sale Proceeds pending resolution of the property issues by the court. By the time the Supplemental Decree was entered, Debtor had filed a bankruptcy petition, and the state court could not divide the parties' assets due to the automatic stay, and the Sale Proceeds remained in Debtor's counsel's trust account. When this Court granted relief from the stay on December 23, 2009, so that the parties could continue the divorce action, Trustee's objection to Debtor's claim of exemption in the Sale Proceeds had been filed, and Debtor's access to the funds was further restricted until the exemption

MEMORANDUM OF DECISION - 21

challenge was resolved.  Consistent with this analysis, Debtor's counsel

stated that he has been asked several times by the parties to release the

Sale Proceeds, but he has thus far refused to do so.

Since the sale of the homestead, Debtor has had no opportunity to

reinvest the funds to purchase a new homestead.  For this Court to now

conclude that the one-year limitations period for reinvestment under

Idaho Code § 55-1008 has lapsed would inequitably deprive Debtor of the

protections contemplated by Idaho law.  Accordingly, construing the

exemption laws liberally, the Court concludes that the one-year

investment period has been continuously tolled since the Sale Proceeds

were generated.  Under Idaho Code § 55-1008, the Sale Proceeds are

exempt, and Debtor may access them for one year to reinvest in a new

homestead.  If, at the conclusion of the one year exemption period, Debtor

has not done so, the exemption will lapse and the Sale Proceeds shall

revert to the bankruptcy estate.

### *Conclusion*

MEMORANDUM OF DECISION - 22

The Court concludes that the Sale Proceeds are not exempt as support payments under Idaho Code § 11-604(1)(b). The Court further concludes that the exemption period under Idaho Code § 55-1008 has been tolled since the sale date on January 17, 2009, and as a result, Debtor's homestead exemption claim is proper. Trustee's objection to Debtor's claim of exemption will be overruled, and a separate order will be entered.[7]

Dated: April 26, 2010



---

[7] Of course, the Court has not forgotten that Debtor and Ulmen have reached an agreement, endorsed by the divorce court, that the Sale Proceeds be used to pay Ulmen support. However, use of the funds in such manner could jeopardize the exempt status of the Sale Proceeds and have serious repercussions for Debtor. *See In re White*, 389 B.R. 693 (9th Cir. BAP 2008). Therefore, Debtor should be cognizant that for the funds to remain exempt, they must be used to purchase a new homestead. The Court can only wonder, and therefore expresses no opinion about, how the reinvestment requirement impacts Debtor and Ulmen and their rights in the divorce case. Regardless, the Court presumes Trustee will be vigilant in ensuring that the Sales Proceeds are used for no other purpose than the purchase of a new homestead. If the money is unused at the conclusion of the one year reinvestment period, Trustee may request turn over of the Sale Proceeds for distribution to Debtor's creditors.

MEMORANDUM OF DECISION - 23

———————————————

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 24